## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

CEDRIC M. HOLLINS, JR.                                            PLAINTIFF
ADC #141321

V.                              No. 4:20-CV-1213-LPR-JTR

MOSS, Corporal, Tucker, Unit, *et al.*                          DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.   Introduction

Plaintiff Cedric M. Hollins, Jr. ("Hollins"), an inmate at the Tucker Unit of the Arkansas Department of Correction, filed this *pro se* 42 U.S.C. § 1983 action alleging that: (1) on June 27, 2020, he woke up on the bathroom floor of his barracks after another prisoner stabbed him in the head, face, and hand; (2) Defendant Corporal Moss ("Moss"), the officer on duty, was "nowhere to be found" for at least

ten to fifteen minutes; (3) when Moss finally arrived, she said she had been across the hall "doing rounds"; (4) Hollins was taken to the infirmary, where Defendant Dr. Horan ("Dr. Horan") examined him and concluded he did not need to be seen by an eye specialist; and (5) Defendants Warden Joe Page III ("Page"), Warden Hurst ("Hurst"), and Captain Tasha Griffin ("Griffin") failed to properly train Moss and allowed the Tucker Unit to be understaffed, which lead to Moss being responsible for supervising approximately 100 inmates at the time Hollins was attacked. *Doc. 2*. While naming all Defendants in their individual and official capacities, Hollins seeks only compensatory and punitive damages. *Doc. 2 at 2–6*.

Defendants Griffin, Hurst, and Page have filed a Motion to Dismiss (*Doc. 13)*; Defendant Moss has filed a separate Motion to Dismiss (*Doc. 20)*; and, Defendant Dr. Horan has filed a Motion for Summary Judgment (*Doc. 25)*. Despite being given the opportunity to do so, Hollins has not filed a Response to any of those Motions.[1]

---

[1] Initially, I gave Hollins until January 11, 2021 to file a Response to the Motion to Dismiss filed by Page, Hurst, and Griffin. In doing so, I explained to Hollins that his claims against Griffin, Page, and Hurst were subject to dismissal, pursuant to the Federal Rules of Civil Procedure and Local Rule 5.5(c)(2), if he failed to file a Response. *Doc. 16*. Despite later granting Hollins a sixty-day extension of time, he failed to file a Response to the Motion to Dismiss. *Doc. 24*. Hollins also did not file a Response to Moss' Motion to Dismiss.

I gave Hollins until March 1, 2021 to file a Response to Dr. Horan's Motion for Summary Judgment, and advised him that his failure to do so would result in: (1) "all of the facts in Defendants' Statement of Facts being deemed admitted"; and (2) "possible dismissal of this action, without prejudice, pursuant to Local Rule 5.5(c)(2)." *Doc. 28*. Hollins has not filed a Response to this Motion and the time to do so has passed.

Rather than grant all three of those Motions, based on Hollins' failure to file a Response, I have elected to decide those Motions on the merits.

For the reasons explained below, I recommend that the Court GRANT all three of these Motions.

## II.    Discussion

### A.    Motion to Dismiss by Defendants Griffin, Hurst, and Page

In their motion and supporting brief (*Docs. 13, 14*), Defendants Page, Hurst, and Griffin argue that Hollins' official capacity claims are barred by sovereign immunity and his individual capacity claims fail because they are based on *respondeat superior* liability. *Doc. 14.*[2]

In his Complaint, Hollins broadly and vaguely alleges these three Defendants failed to train Defendant Moss and to properly staff the Tucker Unit with an adequate number of guards:

> [Defendants Page, Hurst, and Griffin] failed to train their officer. These 3 Defendants are responsible and allowed the posts in the Tucker Unit to be understaffed, which if policy and protocol were taken, there's a great chance this possible life threatening event wouldn't have ever happened. There's suppose to be two to three officers on each post due to there being two side, A & B, which holds 50+ inmates on each side. Defendant could have prevented this from happening. *Doc. 2 at 5.*

---

[2]To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels, conclusions, or formulaic recitations of the elements of a cause of action are insufficient. *Id.* Instead, the complaint must contain sufficient facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true, and it may consider documents attached to the complaint. *Id.*; *Reynolds v. Dormire,* 636 F.3d 976, 979 (8th Cir. 2011). *Pro se* complaints are construed "liberally," but "must still allege sufficient facts to support the claims advanced." *Sandknop v. Missouri Department of Corrections,* 932 F.3d 739, 741 (8th Cir. 2019).

While he asserts this claim against these Defendants, in both their official and individual capacity, Hollins seeks to recover only compensatory and punitive damages from them. *Doc. 2 at 2, 6.*

As a matter of law, Hollins cannot assert an official capacity claim for damages against these Defendants. See *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (the Eleventh Amendment bars official capacity claims, against state actors, for monetary damages); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state officials in official capacity are not persons under § 1983 when sued for damages). Accordingly, Hollins' official capacity claims against these three Defendants should be dismissed, without prejudice.

In a § 1983 action, state actors may not be held liable, under the theory of *respondeat superior*, for injuries caused solely by their employees or agents. *Monell v. New York Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). While Hollins alleges that *Moss* failed to protect him from a surprise attack by another prisoner, he does not allege that Defendants Page, Hurst, or Griffin were personally involved in any misconduct giving rise to the attack. *Doc. 2*.

Absent an allegation of direct participation in a constitutional violation, there are only a limited number of circumstances under which supervising officers may be liable for failing to train and supervise subordinates. *Parrish v. Ball*, 594 F.3d

4

993, 1002 (8th Cir. 2010). To state a claim against Page, Hurst, and Griffin for failing to provide adequate training and supervision, Hollins must allege: (1) they each received notice of a pattern of surprise attacks resulting from inadequate supervision or staffing; (2) they each demonstrated deliberate indifference to this pattern of attacks, thereby authorizing the offensive acts; (3) they each failed to take sufficient remedial action; and (4) their failure proximately caused injury. *McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020) (citations omitted); *Lenz v. Wade*, 490 F.3d 991, 995–96 (8th Cir. 2007).

Hollins' pleadings fail to satisfy any of the *McGuire* requirements necessary to state plausible constitutional claims against Page, Hurst, and Griffin. For example, Hollins does not allege that Defendants Page, Hurst, or Griffin had any notice that Defendant Moss, or any other officer, allegedly "abandoned" their posts. Furthermore, Hollins admits that the reason Moss left her post was to make her regular rounds in an adjoining barracks, which seems a far cry from "abandoning" one's post. While Hollins seems to believe the staffing was "inadequate," he asserts no facts to support his position. More importantly, he fails to allege how, having Moss or another guard present at the duty station in the hall, would have prevented him being the victim of a *surprise attack* in the bathroom area of the barracks.[3] See

---

[3]There are no allegations that Defendants Page, Hurst, or Griffin knew anything about Moss' alleged conduct on the day of the attack, or how it might have contributed to Hollins being attacked. Similarly, there are no allegations, much less supporting facts, suggesting that

*Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (§ 1983 plaintiff must allege the state actor had notice that procedures were inadequate and would likely to result in a violation of constitutional rights.).

Finally, Hollins' conclusory allegations that these Defendants failed to adequately train and supervise their subordinates and properly staff the Tucker Unit is not supported by *any facts*. Such an unsupported assertion, which is based on nothing more than Hollins' own speculation, falls far short of the kind of allegations necessary to state a constitutionally cognizable claim for inadequate training, supervision, or staffing under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

Thus, as a matter of law, Hollins has failed to state any plausible constitutional claims against Defendants Page, Hurst, and Griffin. See *Sandknop v. Missouri Department of Corrections,* 932 F.3d 739, 741 (8th Cir. 2019) (While *pro se* complaints are construed "liberally," they "must still allege sufficient facts to support the claims advanced.")

---

Defendants Page, Hurst, or Griffin: tacitly authorized or ignored a pattern of officers leaving their posts; were aware of a pattern of attacks related to understaffing or insufficient supervision; or failed to do anything that proximately caused Hollins' injuries. Thus, Hollins vague and conclusory claim against these three Defendants does not satisfy any of the *McGuire* elements necessary to state a claim for inadequate supervision or staffing.

[4]Hollins does not allege any facts showing Defendants Page, Hurst, or Griffin had notice of a "pervasive risk of harm created by under-staffing or of prior assaults in the barracks." *Tucker v. Evans*, 276 F.3d 999, 1002, (8th Cir. 2002). Even if Hollins could establish prior notice, he failed to provide any facts suggesting that Defendants Page, Hurst, or Griffin deliberately disregarded an excessive risk to Hollins' health or safety. *Id*.

### B.     Defendant Moss' Motion to Dismiss

In her motion papers (*Docs. 20, 21*), Moss argues that Hollins' official capacity claim against her for monetary damages is barred by sovereign immunity[5] and his individual capacity failure to protect claim is barred by qualified immunity. *Doc. 21*.

Prison officials "must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). This includes a duty to protect prisoners from violence from other inmates. *Id*. at 833. But not every instance of inmate on inmate violence "translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.

Hollins alleges Moss failed to protect him by "abandoning her post" to make rounds in an adjoining barracks. *Doc. 2 at 5*. Even if Moss was not at her duty station when the surprise attack occurred, and this violated an ADC policy or regulation (as Hollins alleges), her conduct did not rise to the level of a constitutional violation. *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for prison policy violation). While Moss

---

[5]This official capacity claim for money damages against Moss fails for the same reasons previously discussed in denying his official capacity claim for money damages against Griffin, Hurst, and Page. See *Murphy*, 127 F.3d at 754 (the Eleventh Amendment bars official capacity claims, against state actors, for monetary damages).

leaving her post to round in an adjoining barracks *might* support a claim for negligence, it falls far short of demonstrating that Moss was deliberately indifferent to a known risk that Hollins might be attacked, and then did nothing to protect him. *Tucker*, 276 F.3d at 1002.

For Hollins to state an Eighth Amendment failure to protect claim against Moss, his allegations must demonstrate that: (1) Moss' decision to leave her duty station to round in the adjoining barracks "objectively" created a substantial risk that Hollins might be the victim of a surprise attack; and (2) "subjectively," Moss knew of this substantial risk, but was deliberately indifferent to it. *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). Apart from Hollins' *subjective opinion* that Moss leaving her post triggered the surprise attack, there is *nothing* in his pleadings capable of supporting either element necessary to state a plausible failure to protect claim against Moss.[6]

Hollins acknowledges in his pleadings that Moss regularly left her duty station to round in the adjoining barracks. However, he fails to allege that, prior to him being the victim of a surprise attack while Moss was making her rounds, any other prisoner in his barrack was ever the victim of a similar surprise attack. Absent such allegations, along with accompanying facts, there is *nothing* to support Hollins'

---

[6]Hollins makes no attempt to explain *how* Moss was supposed to know about or anticipate another prisoner launching a *surprise attack* on Hollins.

entirely conclusory assertion that Moss leaving her duty station to make her regular rounds created an objectively serious risk that he would be the victim of a surprise attack.

To satisfy the *subjective* prong of his failure to protect claim, Hollins must demonstrate that Moss *knew* of the substantial risk he might be the victim of a surprise attack if she left her duty station, and then was deliberately indifferent to that known risk. *Id*. Because Hollins has not alleged a pattern of earlier surprise attacks in his barracks, sufficient to put Moss *on notice* that Hollins might be attacked if she left her post, there is *nothing* suggesting that Moss subjectively knew of this risk and was deliberately indifferent to it. *Id*. at 995–96 (quoting *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (A "single incident, or a series of isolated incidents," is usually insufficient to show a prison guard subjectively disregarded a substantial risk of serious harm, while a pattern of incidents may raise the inference.)).

In short, Hollins' *own inability* to anticipate the surprise attack creates legally insurmountable difficulties in stating a plausible constitutional claim that Moss failed to protect him from it. *Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018); *Curry v. Crist*, 226 F.3d 974, 978–79 (8th Cir. 2000); *Jackson v. Everett*, 140 F.3d

1149, 1151 (8th Cir. 1998); *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

Because Hollins' pleadings do not state a plausible constitutional claim against Moss for failing to protect him from the surprise attack by another prisoner, her Motion to Dismiss should be granted.[7]

### C.   Defendant Dr. Horan's Motion for Summary Judgment Based on Hollins' Failure to Exhaust Administrative Remedies

In his Motion for Summary Judgment,[8] Brief in Support, and Statement of Undisputed Facts,[9] Dr. Horan argues that Hollins' claims should be dismissed because he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). *Docs. 25–27.*

Hollins has asserted an inadequate medical care claim against Dr. Horan based on his refusal to allow Hollins to see a specialist for the injury to his eye. *Doc. 2 at*

---

[7]Because Hollins has failed to state a plausible constitutional claim against Moss, the Court need not address her qualified immunity argument.

[8]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[9]Because Hollins did not challenge Dr. Horan's Statement of Undisputed Facts, they are now uncontroverted and may be relied on as being true.

*5.* Hollins was required to fully and properly exhaust his administrative remedies regarding his eye care complaint against Dr. Horan before initiating this § 1983 action against him in federal court. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 90, 93–95 (2006); *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014).[10]

To satisfy the PLRA's exhaustion requirement, Hollins was obligated to grieve his eye care complaint against Dr. Horan under the ADC's three step grievance policy that required him to file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Grievance Officer no later than six days after initiating the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision.[11] ADC Adm. Dir. 19-34 § IV(E)-(G) ("AD 19-34"). *Doc. 26-1.*

---

[10]Although exhaustion of administrative remedies is an affirmative defense, the Eighth Circuit has clarified that a court cannot proceed to the merits of any unexhausted claims. *Jones v. Bock,* 549 U.S. 199, 211 (2007); *Pinder v. McDowell,* 714 Fed. Appx. 612, 613 (8th Cir. 2018); *Porter v. Sturm,* 781 F.3d 448, 451 (8th Cir. 2015).

[11]Depending on the nature of the grievance, the Step 3 decision may be made by the Warden, the Health Services Administrator, the Mental Health Supervisor, or applicable designee. ADC Adm. Dir. 19-34 § IV(G).

The ADC's exhaustion policy also requires that, for each claim, an inmate must "specifically name each individual involved." *Id*. § IV (C)(4)). The grievance forms also remind prisoners that they must provide the "name of personnel involved." *Doc. 26-2 at 4.* Finally, the ADC's exhaustion policy cautions prisoners that: "An inmates who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." *Doc. 26-1 at 5.*

Between June 27, 2020 (the date of the surprise attack) and October 9, 2020 (the date this action was filed), Hollins submitted two formal unit level medical grievances, TU-20-00645 and TU-20-00962. *Doc. 26-3 at 1; Doc. 26-2.*

In TU-20-00645, Hollins did *not* name Dr. Horan. Nevertheless, in denying the grievance, the decision maker noted Dr. Horan's involvement in the grieved conduct, which obviated Hollins' error. *Doc. 26-2 at 1, 4.* However, because Hollins did *not* proceed with the Step 3 appeal of the denial of this grievance to the Deputy Director for Health and Correctional Programs, he failed to fully and completely exhaust TU-20-00645. *Doc. 26-3 at 1.*

Hollins did not name or otherwise attempt to identify Dr. Horan in grievance TU-20-00962. In denying the grievance, the Step 2 decision makers made no mention of Dr. Horan, or any role he might have played in the grieved conduct. *Doc. 26-2 at 5, 8.* Once again, Hollins did *not* appeal the denial of this grievance to the

12

Deputy Director for Health and Correctional Programs. *Doc. 26-3 at 2*. Accordingly, Hollins failed to fully and completely exhaust TU-20-00962.

Based on Hollins' failure to fully and completely exhaust either of these grievances, as required by the plain language of the PLRA, Dr. Horan is entitled to summary judgment.

### III. Conclusion

Hollins unquestionably sustained serious injuries from a surprise attack by another inmate. He cannot, however, recover monetary damages from any of the Defendants in their official capacity. As a matter of law, Hollins has failed to state any plausible individual capacity constitutional claims against Defendants Griffin, Hurst, or Page. Similarly, Hollins has not stated a plausible failure to protect claim against Defendant Moss. Finally, Hollins cannot proceed with his claim against Dr. Horan because he did not fully and completely exhaust the only two grievances that are relevant to this claim.

IT IS THEREFORE RECOMMENDED THAT Defendants Griffin, Hurst, and Page's Motion to Dismiss (*Doc. 13*) be GRANTED, Defendant Moss' Motion to Dismiss (*Doc. 20*) be GRANTED, and Defendant Dr. Horan's Motion for Summary Judgment (*Doc. 25*) be GRANTED. Accordingly, all of Hollins' claims against all Defendants should be DISMISSED, without prejudice, and a Judgment should be entered in favor of Defendants.

DATED this 14th day of June, 2021.

_____
UNITED STATES MAGISTRATE JUDGE